What this case is about is whether or not Mr. Hubbard's stock options grants have a readily ascertainable fair market value at grant. And the reason that we're here, it's because of the language in the stock option agreement. And for your reference- Mr. Isaacson, could you just sort of talk closer to the mic? Oh, yes, Your Honor. Or maybe sort of point it more towards your mouth. There we go. Okay. Thank you, Your Honor. The reason that we're here is because of the language in the incentive stock option agreement. And that agreement basically says that the shares will be 100 percent vested and immediately exercisable upon a termination without cons. Now, in this case, the questions that we're going to ask you to address go back to the 1.83-7 regulations and the 1.421-6 regulations, which define readily ascertainable fair market value for non-publicly traded stock options. And as you're aware from the briefing, there is a full. Number two, are the options transferable? Okay. Let's stop there. Are the options transferable? The answer is yes. And the reason for that, it's the reference to 1.83-3D, which defines transferability as options are basically transferable whenever the option holder has the ability to pledge the shares as collateral for a loan. And in this case, the stock option agreement on page 2 does give Mr. Hubbard the ability to pledge the shares in exchange for a broker-assisted cashless exercise, which is essentially the same as a loan. Why don't you show me? I've got page 2 here. What I would like to show you, it's marked on page 00148. You don't need to speak quite so close to the mic. Oh, thank you. Okay. Sorry, Your Honor. It's okay. I understand. What was going on is your voice was sort of fading in and out, maybe because you were leaning back and forth. Just keep constant distance from the microphone if you can. I can adjust it. You can adjust it. Very good. Very good. Thank you. Okay. Go ahead. I'm looking at the stock option agreement. Do you have it in front of you? Yes, I do, Your Honor. Can you tell me which provision you are on? Okay. It's part of the agreement. It's paragraph 3 on the second page. Methods of payment? Yes. And so the method of payment, Your Honor, is the third method where they talk about the delivery of a properly executed exercise notice together with such documentation as the administrator and broker, if applicable, shall require to effect an exercise of the option and delivery to the company of the sale or loan proceeds required to pay the exercise price. I'm sorry. I did not understand any of that. What exactly? This has to do with how you pay for the option to begin with? Yes. Well, what that provision does is that the option strike price is around $10 per share. And what that provision in the code does is it allows Mr. Hubbard — I'm sorry, that provision in the agreement does is it allows Mr. Hubbard to go back to a stock price in full. And that language — let me give you the statute under Regulation T, which authorizes that exercise. It's 12 CFR section 220.3 subparens E subparens 4. I'm sorry. Can you hear me again? Okay. Just the section number. Okay. The section, it's 220.3 E4. Okay. And what does that say? What that is, it's Regulation T. And what it says is that a brokerage house may temporarily finance a customer's receipt. That's a SEC regulation? Yes. That's the SEC regulation. Although — but what that does is it tells us that this particular provision gives Mr. Hubbard the right to pledge his options as collateral for a loan. What difference does it make? Pardon? What difference does it make whether he gets the loan from his broker or from his uncle? It makes absolutely no difference, Your Honor, because the test under the regulations, it's just if he can pledge his shares to any person as collateral for a loan or as options. Pardon me. The government position is that what's done under that arrangement is to pledge the stock and not the option. No, Your Honor. It is a pledge of the option that allows the broker-assisted cashless exercise. Well, this is the point of exercise. It is the point of exercise. But what — Just stop. Can he pledge or transfer it before the point of exercise? Yes, he can, Your Honor. And that's what that provision allows him to do. I don't see why it does that. Well — This is a method of payment. This has to do with how, I presume, you pay for the stock when you exercise the option. So this provision that you've read, 3, can only govern, if it governs anything relevant to your law, it can only govern conduct at the time he has to make a payment. I'm saying, let's say that the strike price is 10 and let's say the option is 5 years and then in year 2, the stock price is not high enough in his view. He doesn't want to exercise it because it's close to 10 or it's below 10 or whatever reason. Can he, in year 2, say, but you know, it would be very nice to have a loan so I can go buy myself that yacht that I've been hoping to get. Can he at that point take the option and pledge it for that kind of loan? Yes, he can, Your Honor. What gives him that right? Well — I thought the agreement made it pretty clear that the option is not transferable except upon death to his heirs. No, Your Honor. Under the definition of transferability, if he can pledge the options as collateral for a loan to any party, they are transferable. But that's the question I'm asking. I thought the agreement said it's not transferable and therefore if you went and tried to use it as collateral, people would say, gee, you know, this is not very good collateral because I can't — if you default on it, I can't take possession of the option because it's not transferable. Well, Your Honor, the provision under Paragraph 3c gives him the right to pledge the options as collateral for a loan to a broker. If he exercises, only if the price goes above the stock price because presumably he won't exercise the option at 10 if the price of the stock is 8. Yes, Your Honor. So this provision only comes into play if and when the option is to be exercised. It doesn't come into play before that. For one thing, you don't know whether the price will be high enough to exercise it. That doesn't matter, Your Honor, because the test is whether he can pledge the shares as collateral to any person. Okay. Let me pose the issue a little differently. You're telling us that the word transferable has a different meaning in the agreement itself than it does in the regulation. Yes, Your Honor. Now, why does the regulation prevail over the provision in the agreement that says specifically, as a matter of contract, that the option may not be transferred in any manner other than by will or by dissent or distribution? Why does the regulation in that sense prevail over what the parties have contracted for, which is non-transferability? Well, we've actually dealt with that issue in other cases that we've had before the tax court. And the reason for that is Treasury regulations define transfer as broadly as possible. And the Treasury regulations, they actually provide a much broader definition of the term transfer than does the agreement. So parties cannot contract out of what the regulation would otherwise provide? The regulations govern the tax treatment, and the parties cannot contract out of the tax treatment under the regulations. We'll hear from the government. Okay. May it please the Court. Your Honor, there's nothing in the regulation that makes this option transferable. And, in fact, the stock option agreement, paragraph 4, which my opponent has ignored I take it that your answer to Judge Shader's question would be that whatever the parties can by contract provide more limited rights in the option. Yes, Your Honor. But the regulation just says in order to be taxable on the date of grant, the option has to be transferable. And there's nothing in the regulation that would counterdict what this agreement says. And paragraph 4, which is right below the one my opponent was reading from, says that this option is non-transferable and, moreover, specifically provides that during the lifetime of Mr. Hubbard, it was only exercisable by him. Therefore, a pledge, which he couldn't do anyway, would be meaningless. And what he could pledge – Well, there's nothing that prevents him from pledging it if a bank is dumb enough or his uncle is dumb enough to take his collateral, right? Well, it would violate – Huh? Yeah. Well, it wouldn't make any sense. But actually the agreement prevents it because it says this option is non-transferable. It doesn't say – there's nothing in there that says he can pledge it. What he can do – Well, the person who accepts it as a pledge wouldn't – Well, he could accept it but – Wouldn't get much – And it would be in violation of the agreement. And also it's well settled that when something can be pledged and this one can't, if the transferee is under a substantial risk of forfeiture, then it's not transferable. And in this case, if Mr. Hubbard left the employment within the first year or was fired for cause, the options would fail, and that in itself makes it non-transferable because any transferee, if it could be transferred, would take it subject to those conditions. So the paragraph 4, which is on page 148 of the record excerpt, is really the end of the case because it says specifically the option is not transferable and there's nothing contrary in the recs. Moreover – Okay. Thank you. In that case, thank you. Okay. Okay? Okay. The case is now able to stand submitted.
judges: Goodwin, Kozinski, Shadur